Stephen D. Hibbard (State Bar No. 177865)
Mikael A. Abye (State Bar No. 233458)
SHEARMAN & STERLING LLP
525 Market Street, Suite 1500
San Francisco, CA 94105-2723
Telephone:   (415) 616-1100
Facsimile:    (415) 616-1199
Email: shibbard@shearman.com
          mabye@shearman.com

Jaculin Aaron (State Bar No. 133983)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone:  (212) 848-4000
Facsimile:   (212) 848-7179
Email: jaaron@shearman.com

Attorneys for Defendants Elan Corporation, plc; G. Kelly
Martin; Lars Ekman; and Shane Cooke

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHILCO INVESTMENTS, LTD, DAVID MAUER, DAVID ROSENBAUM, and MARIA ROSENBAUM,<br><br>Plaintiffs,<br><br>vs.<br><br>G. KELLY MARTIN, LARS EKMAN, SHANE COOKE, and ELAN CORPORATION, PLC<br><br>Defendants. | CASE NO. C 10-02785 CRB<br><br>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 9(b) AND 12(b)(6)<br><br>Date:          February 4, 2011<br>Time:          10:00 a.m.<br>Courtroom:  8, 19th Floor<br>Judge:         Honorable Charles R. Breyer |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

SUMMARY OF ARGUMENT ....................................................................................... iv

ARGUMENT ................................................................................................................... 1

I.     THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT DEFENDANTS MADE ANY FALSE OR MISLEADING STATEMENTS REGARDING BAPINEUZUMAB ................................................................................................ 1

     A.     The Complaint Does Not Adequately Allege That the Statements Regarding the Commencement of Phase III Trials Were False or Misleading ...................... 1

     B.     Elan and Wyeth's Statements Regarding the Top-Line Phase II Results Were Not False or Misleading .................................................................................. 5

     C.     Plaintiffs Cannot Rely on Stock Price or Analysts' Reactions To Establish Materiality of Alleged Omissions From Top-Line Release ................................... 7

     D.     The Alleged Misrepresentations Are Protected by the "Safe Harbor" for Forward-Looking Statements .................................................................................. 8

II.     THE COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER REGARDING THE BAPINEUZUMAB DISCLOSURES ........................................... 9

     A.     Plaintiffs' Allegations Are Not Sufficiently Particularized To Create a Strong Inference of Conscious Misconduct or Deliberate Recklessness ............... 9

     B.     Defendants' Legitimate Reasons for the Alleged "Omissions" in the May 17, 2007 and June 17, 2008 Releases Are Far More "Cogent and Compelling" Than Plaintiffs' Implausible Theories of Scienter ........................... 11

     C.     Plaintiffs Cannot Rely on Any "Core Operations" Presumption of Scienter ........ 13

III.     THE COMPLAINT FAILS TO STATE A CLAIM WITH RESPECT TO THE DISCLOSURES CONCERNING TYSABRI .................................................................. 13

CONCLUSION ................................................................................................................. 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551 (E.D. Pa. 2009) ............................................ 6

*In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989).................................................. 7

*In re Astrazeneca Sec. Litig.*, 559 F. Supp. 2d 453 (S.D.N.Y. 2008).......................................... 9

*Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008) ............................................ 14

*Bilhofer v. Flamel Techs., SA*, 663 F. Supp. 2d 288 (S.D.N.Y. 2009) ........................................ 4

*Brody Transitional Hosps. Corp.*, 280 F.3d 997 (9th Cir. 2002) .................................... iv, 4, 5, 6

*In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857 (N.D. Cal. 2004) ................................. 4

*Cozzarelli v. Inspire Pharm.*, 549 F.3d 618 (4th Cir. 2008) ................................................ v, 8, 12

*In re Cutera Sec. Litig.*, 610 F.3d 1103 (9th Cir. 2010) .................................................................... 4

*Detroit Gen. Ret. Sys. v. Medtronic*, 621 F.3d 800 (8th Cir. 2010) ............................................ 10

*In re FoxHollow Techs. Inc.*, No. C 06-4595 PJH, 2008 U.S. LEXIS 52363
    (N.D. Cal. May 27, 2008)............................................................................................. iv, 4

*Glaser v. Enzo Biochem., Inc.*, 303 F. Supp. 2d 724 (E.D. Va. 2003) ........................................ 4

*Glen Holly Entm't v. Tektronix, Inc.*, 352 F.3d 367 (9th Cir. 2003)....................................... iv, 4

*In re Inspire Pharm., Inc. Sec. Litig.*, 515 F. Supp. 2d 631
    (M.D.N.C. 2007) ............................................................................................................... 8

*Johnson v. Pozen*, No. 1:07 CV 599, 2009 WL 426235
    (M.D.N.C. Feb. 19, 2009) ............................................................................................... 8

*Katz v. Household Int'l*, 91 F.3d 1036 (7th Cir. 1996) ................................................................ 8

*Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002) ...................................................... 9

*In re Navarre Corp. Sec. Litig*, 299 F.3d 735 (8th Cir. 2002) ................................................... 1

*In re Nuvelo, Inc. Sec. Litig.*, Civ. 07-4056 VRW, 2008 WL 5114325
    (N.D. Cal. Dec. 4, 2008) ................................................................................................. 8

*Padnes v. Scios Nova*, No. Civ. 95-1693 MHP, 1996 WL 539711
    (N.D. Cal. Sept. 18, 1996)......................................................................................*passim*

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) ........................................................................ 14

*San Leandro Emerg. Med. Grp. Profit Sharing Plan v. Phillip Morris Cos.*, 75 F.3d 801
    (2d Cir. 1996) ................................................................................................................... 2

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ......................................... v, 9

*Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009),
    *cert. granted,* 130 S. Ct. 3411 (2010) ................................................................................ 15

*South Ferry LP. #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) .................................................... 13

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F. 3d 190
    (2d Cir. 2008) ...................................................................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ......................................... v, 13

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) ............................................................. 7

*Wegner v. Luminys,* 2 F. Supp. 3d 1231 (N.D. Cal. 1998) ............................................................. 4

*Yourish v. Cal. Amplifier*, 191 F.3d 983 (9th Cir. 1999) ..................................................... iv, 2, 14

## STATUTES

15 U.S.C. § 77z-2(c)(1)(A)(i) (1997) ................................................................................................ v

1

## SUMMARY OF ARGUMENT

2          Plaintiffs' Complaint is a classic example of the type of securities fraud claim that the

3   PSLRA was designed to terminate at the pleading stage.  Plaintiffs' failure to plead any factual

4   basis for their allegations is fatal, and exposes the sole support for their claims as faulty

5   guesswork.  The Complaint should be dismissed with prejudice in its entirety because it fails to

6   allege that Defendants committed securities fraud in connection with statements made about

7   bapineuzumab (for Alzheimer's disease) and Tysabri (for multiple sclerosis).

8          Plaintiffs' claim with regard to Elan and Wyeth's May 21, 2007 press release announcing

9   their intention to commence Phase III trials of bapineuzumab fails for several reasons, the most

10  basic of which is that the Complaint's conclusory allegations lack any of the "corroborating

11  details" necessary to allege with particularity that the press release was false or misleading.  *See*

12  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 994-95 (9th Cir. 1999).  The simple fact is that the

13  criteria for and the results of the interim review of the Phase II trial were never disclosed, and

14  Plaintiffs' speculation about what those criteria and results were is not sufficient to state a claim.

15  Plaintiffs could not have been misled by Defendants' alleged implicit statements that the data

16  were "strong" or "clinically meaningful" since such statements are too vague to be actionable.

17  *See In re FoxHollow Techs., Inc.*, No. C 06-4595 PJH, 2008 U.S. Dist. LEXIS 52363, at *48

18  (N.D. Cal. May 27, 2008) ("In general, vague and unspecific assertions of corporate optimism or

19  statements of mere puffing cannot state an actionable claim of fraud.") (citing *Glen Holly Entm't,*

20  *Inc. v. Tektronix*, Inc., 352 F.3d 367, 379 (9th Cir. 2003)).

21          Plaintiffs' claim based on Elan and Wyeth's June 17, 2008 release disclosing the "top-

22  line" final results of the Phase II trial is equally deficient.  At most, Plaintiffs allege that the

23  release was "incomplete" because it did not include the detailed results, but that is insufficient to

24  plead securities fraud under established Ninth Circuit authority.  *See Brody Transitional Hosps.*

25  *Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("Rule 10b-5 . . . prohibit[s] *only* misleading and

26  untrue statements, not statements that are incomplete.") (emphasis in original).  Plaintiffs fail to

27  show the alleged omissions "affirmatively create[d] an impression of a state of affairs that

28  differ[ed] in a material way from the one that actually exists[ed]."  *Id.*  The public statements

1   alleged in the Complaint are inactionable for the additional reason that they are protected by the

2   statutory safe harbor for forward-looking statements.  15 U.S.C. § 77z-2(c)(1)(A)(i) (1997).

3          Plaintiffs' implausible scienter allegations fall far short of the strict pleading standards of

4   the PSLRA which require facts that support a "strong inference" of scienter, one that is "cogent

5   and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v.*

6   *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309-10 (2007).  Elan and Wyeth had specific, non-

7   fraudulent reasons for the content and manner of their disclosures concerning the Phase II trial,

8   and the Complaint's allegations of scienter are insufficient in light of these far more plausible

9   explanations for Defendants' conduct.  *See Cozzarelli v. Inspire Pharm.*, 549 F.3d 618, 626 (4th

10  Cir. 2008) ("legitimate business motivations explain[ed] each of the facts alleged in the

11  complaint more convincingly than plaintiffs' tenuous theory of wrongful intent").

12         Plaintiffs have little to say in challenging these reasons, and so instead try to shift ground

13  and argue that Defendants could have had both legitimate *and* fraudulent reasons for their

14  disclosures.  Plaintiffs take this nonsensical position because their "opposing inference" of

15  fraudulent intent is utterly implausible.  It is neither cogent nor compelling for Plaintiffs to

16  contend that Elan and Wyeth initiated Phase III trials costing hundreds of millions of dollars

17  while knowing bapineuzumab had "failed" the interim review, and, further, that Elan and Wyeth

18  made misleading disclosures about the Phase II results on June 17, 2008 while knowing that their

19  misrepresentations would be exposed a mere six weeks later at ICAD.  Plaintiffs' only effort to

20  plead a motive for such conduct – that Defendants misrepresented results in order to defraud

21  doctors and patients into enrolling in Phase III trials – was so obviously inadequate that Plaintiffs

22  now deny they ever made motive allegations.  Opp. at 19 n.14.

23         Further, Plaintiffs fail to respond to Defendants' argument that their allegations regarding

24  Defendants' access to internal reports that rendered their statements false or misleading are

25  insufficient because they lack "adequate corroborating details," including "from whom

26  [Plaintiffs] obtained the information."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985

27  (9th Cir. 1999).  In addition, Plaintiffs' scienter allegations are nothing more than second-

28  guessing of Elan and Wyeth's judgment about what to include in their press releases, which is

---

DEFENDANTS' REPLY I/S/O                       v                  CASE NO.:  C 10-02785 CRB
MOTION TO DISMISS                                                                 292928

1   not sufficient to state a claim for securities fraud.  *See Padnes v. Scios Nova*, No. Civ. 95-1693

2   MHP, 1996 WL 539711, at *5 (N.D. Cal. Sept. 18, 1996) (fraud allegations insufficient where

3   plaintiffs failed to allege "facts explaining why the difference between the earlier and later

4   statements is not merely the difference between two permissible judgments, but rather the result

5   of a falsehood").

6          Plaintiffs' allegations with respect to Tysabri are equally flawed.  Their claims rest on

7   faulty and unsupported assumptions, the most notable of which is that a so-called "suspected"

8   case of PML is the equivalent of an actual case of PML.  Plaintiffs fail to allege with particularity

9   that Defendants' statements were false or misleading, and fail to allege with particularity any

10  facts to support a strong inference of scienter.  Nor do Plaintiffs take into account the plausible

11  non-fraudulent reasons for not disclosing "suspected" cases of PML.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### ARGUMENT

2

**I.   THE COMPLAINT DOES NOT ADEQUATELY ALLEGE THAT
DEFENDANTS MADE ANY FALSE OR MISLEADING STATEMENTS
REGARDING BAPINEUZUMAB**

3

4

    **A.   The Complaint Does Not Adequately Allege That the Statements Regarding
the Commencement of Phase III Trials Were False or Misleading**

5

6

        **1.   Plaintiffs Fail To Plead Falsity with Sufficient Particularity Under the
PSLRA**

7

       Plaintiffs' claim that the May 21, 2007 press release was materially misleading hinges on

8

their vague and conclusory allegation that bapineuzumab failed to "outperform placebo" using

9

the ADAS-cog and DAD tests and therefore did not meet the "very specific criteria" for the

10

interim review of the Phase II results that Elan and Wyeth had set as the prerequisite for

11

proceeding to Phase III trials.  Opp. at 5.  This claim must fail because Plaintiffs fail to plead any

12

particularized facts to support their allegation of falsity.  *See, e.g.*, *In re Navarre Corp. Sec. Litig*,

13

299 F.3d 735, 744-45 (8th Cir. 2002) (holding that even if "the subject matter of the fraud is

14

uniquely within the defendants' knowledge or control … investors must plead with particularity

15

the who, what, when, where and how of [the] alleged scheme").

16

       Plaintiffs argue that they have pleaded with particularity because the Complaint

17

"specifically alleges the standard Elan and Wyeth intended to use" to evaluate the interim data,

18

and "specifically pleaded that, at the interim review, bapineuzumab did not meet that objective

19

standard."  Opp. at 6.  However, the criteria for and the results of the interim review were never

20

publicly disclosed, and the Complaint alleges no facts that would show these allegations to be

21

anything more than baseless speculation that the interim results were the same as the final results

22

and were evaluated in the same way.  Opp. at 5.  On the contrary, the documents relied on in the

23

Complaint (namely, those describing the methodology of the study and setting forth the final

24

results presented at ICAD) indicate that the interim results were stronger than the final results.

25

*See* Def. Mem. at 11 n.3.[1]

26

---

27

[1] Plaintiffs argue that this is "very unlikely" because their Complaint alleges that there was "no short-term advantage for bapineuzumab" and therefore "any data showing a positive effect of the drug were more likely to be evident at the end of the study, rather than earlier, upon the interim look."  Opp. at 7 n.7; Compl. ¶ 26(a).  This argument confuses the overall length of the Phase II trial (three years, the spring of 2005 to the spring of 2008) with the 78-

28

DEFENDANTS' REPLY I/S/O
MOTION TO DISMISS
    1    CASE NO.: C 10-02785 CRB
292928

1    Plaintiffs do not even attempt to allege that they have some confidential source or

2  particulars for their allegations, which must fail under Ninth Circuit authority establishing the

3  insufficiency of such allegations.  *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 994-95 (9th Cir.

4  1999) (allegations of "the existence of confidential non-public information" that supposedly

5  revealed "true facts" contradicting Defendants' optimistic statements were insufficient because

6  they contained "none of the particulars regarding the non-public information"); *see also San*

7  *Leandro Emerg. Med. Grp. Profit Sharing Plan v. Phillip Morris Cos.*, 75 F.3d 801, 812 (2d Cir.

8  1996) ("Plaintiffs' unsupported general claim of the existence of confidential company sales

9  reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss.").

10    Moreover, Plaintiffs' allegations concerning the interim review are not even internally

11  consistent, and are therefore implausible.  Their vague and general allegation that the standard for

12  the interim review was whether bapineuzumab "outperformed" placebo on two tests is

13  inconsistent with their allegation that Elan and Wyeth agreed to use "very specific criteria" in

14  evaluating the interim results.  Plaintiffs' allegation is so broad and without detail that it does not

15  even specify what metric was to be used, or whether the "outperformance" was required to be

16  statistically significant.

17    Plaintiffs' allegation is also inconsistent with the statements by Elan representatives cited

18  in the Complaint about the complexity of the criteria for the interim review.  At the January 9,

19  2007 conference, Mr. Martin referred to those complex criteria, discussing them not in terms of

20  statistical significance, but rather "when" endpoints would "move" and at what "amplitude," and

21  the usefulness of the criteria in designing the Phase III trial:

22        What we've given the independent review group is very specific criteria that
         we're looking for.  And we came up with that criteria by looking at a vast array of
23        data, some of which I went through a little while ago that lets us anticipate which
         of these endpoints are going to move when and to what amplitude.  And we're
24        trying to do it in a way that therefore helps us design the Phase III trial with more

25  _____

26  week dosing period for each of the four dose cohorts in the study.  It also ignores the fact that the Phase II trial was a
    multiple ascending dose trial, such that the lower dose cohorts started and ended their 78-week treatment period
27  earlier than the higher dose cohorts.  Accordingly, as of the time of the interim review in the spring of 2007, there
    was data available for all or most of the 78-week treatment period for the lower dose cohorts, which ultimately had
    stronger results than the higher dose cohorts (as shown in the final Phase II results presented at ICAD).  *See* Def.
28  Mem. at 11 n.3.  Plaintiffs' assertion that there was no short-term advantage for bapineuzumab therefore does not
    logically support their argument that the interim results could not have been stronger than the final results.

_____

1

specificity.  And we're also trying to do it in a way that preserves the integrity of
the current Phase II.

2

3

¶ 70; Ex. I at 9.  At the May 1, 2008 conference, Mr. Martin again emphasized the complexity of

the factors involved in the criteria for the interim review:

4

5

6

7

When we took an interim look, we clearly were looking for some specific things
from a clinical point of view.  There was a number of end points that we were
looking at.  We looked at it at a period of time that was still fairly early on in the
Phase II.  So we both - we looked for both specific points and specific trends in
certain things and we put that together and we had discussions with both the
European agency and the U.S. agency, the collective decision was we should
move to a Phase III, simultaneously.

8

¶ 77; Ex. Q at 2.[2]

9

**2.      Plaintiffs Fail to Plead That the May 21, 2007 Release Was Misleading**

10

11

Plaintiffs argue that the May 21, 2007 release was misleading because "when Defendants

announced that they were proceeding to Phase III, the market understood that the interim data

12

had proven to be 'strong' and 'very meaningful' according to Defendants' specific, objective

13

criteria."  Opp. at 9.  Plaintiffs contend that the market was misled by these general terms

14

because they were understood as "proxies" for "very specific criteria."  Opp. at 8-9.  This

15

argument makes no sense because the "very specific criteria" were never disclosed.  Even

16

assuming for purposes of argument that the release implicitly represented that those criteria had

17

been met, such a representation could not have conveyed any concrete information to the market.

18

Because the May 21, 2007 press release did not say anything about the standards used by

19

Elan and Wyeth in evaluating the data on the interim review, Plaintiffs' claim essentially depends

20

on the existence of a duty on Elan's part to update its previous statements that Elan and Wyeth's

21

intention was that the interim results would have to be "strong" and "clinically meaningful" in

22

order for Elan and Wyeth to commence Phase III trials.  *See* Opp. at 7-9.  Plaintiffs, however, do

23

not dispute that Ninth Circuit case law does not impose a duty to update; and even if there were

24

such a duty, these terms ("strong" and "clinically meaningful") would not be sufficiently

25

26

27

28

---

[2] Plaintiffs' assertion that the "failure" of the data to satisfy the interim criteria was made evident by the "dosing,
patient and endpoint modifications Defendants made to the Phase 3 study" is without merit.  Opp. at 6.  At most,
these facts might suggest that the data revealed some difference in effect in patient subgroups or doses, but not that
the data were not strong and clinically meaningful, or that the interim criteria were not met.  Documents relied on in
the Complaint suggest that the results of the interim review were strong, including in the total population.  *See* Def.
Mem. at 11 n.3.

---

DEFENDANTS' REPLY I/S/O                    3                    CASE NO.:  C 10-02785 CRB
MOTION TO DISMISS

1   concrete to implicate it.  *See* Def. Mem. at 12-13; *see also Glaser v. Enzo Biochem., Inc.*, 303 F.

2   Supp. 2d 724, 735 (E.D. Va. 2003) (defendant's statement that "it's all over, but the shouting"

3   with regard to Phase I results was a non-actionable "'puffing' statement expressing enthusiasm

4   about the prospects of the HIV/AIDS protocol" despite data's failure to satisfy standard FDA

5   markers of efficacy for HIV drugs).[3]  Plaintiffs' reliance on *Bilhofer v. Flamel Technologies, SA*,

6   663 F. Supp. 2d 288 (S.D.N.Y. 2009), to respond to this point is misplaced.  In *Bilhofer*, the court

7   held that the defendant's statements were not puffery because plaintiffs had alleged facts

8   sufficient to show defendants could not have had a reasonable basis for those statements.  *See id.*

9   at 299.  In this case, Plaintiffs have not alleged facts sufficient to support their argument that the

10  results of the interim review could not reasonably be viewed as "strong" or "clinically

11  meaningful."

12          Lastly, Plaintiffs cite to cases from other jurisdictions to argue that, by virtue of

13  disclosing a major business decision to proceed to Phase III trials, Elan and Wyeth were

14  obligated to reveal details of the interim results.  Opp. at 8.  Plaintiffs neglect to mention the

15  Ninth Circuit authority, which is clear that public statements are not actionable for fraud merely

16  for being incomplete.  *Brody,* 280 F.3d at 1006 ("Rule 10b-5 … prohibit[s] *only* misleading and

17  untrue statements, not statements that are incomplete.") (emphasis in original); *In re Cutera Sec.*

18  *Litig.*, 610 F.3d 1103, 1109 (9th Cir. 2010) (same) (quoting *Brody*, 280 F.3d at 1006).  There was

19  nothing misleading about the "incompleteness" of the May 21, 2007 release – to the contrary,

20  Elan and Wyeth's public statements were clear that they would not be disclosing the interim

21  criteria or data, and the release warned that the Phase II study "remain[ed] blinded" and "[n]o

22  conclusion about this study can be drawn until the study is completed and the final data are

23  analyzed and released in 2008."  ¶ 72.

24  ───────────────
    [3] *See also In re FoxHollow Techs., Inc.*, No. C 06-4595 PJH, 2008 U.S. Dist. LEXIS 52363 at *48 (N.D. Cal. May
25  27, 2008) ("In general, vague and unspecific assertions of corporate optimism or statements of mere puffing cannot
    state an actionable claim of fraud.") (citing *Glen Holly Entm't, Inc. v. Tektronix*, Inc., 352 F.3d 367, 379 (9th Cir.
26  2003)); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 868 (N.D. Cal. 2004) (stating that courts from this
    district "have found that vague statements are not actionable because 'they are considered immaterial and discounted
27  by the market' and because 'reasonable investors do not consider soft' statements or loose predictions important in
    making investment decisions,'" and holding that statements such as defendants' product was "strong" and its market
    was "very positive" "constitut[ed] run-of-the-mill corporate optimism on which no reasonable investor would rely")
28  (*citing Wegner v. Lumisys*, 2 F. Supp. 3d 1231, 1245 (N.D. Cal. 1998)).

───────────────

DEFENDANTS' REPLY I/S/O                    4                 CASE NO.: C 10-02785 CRB
MOTION TO DISMISS                                                        292928

**B.      Elan and Wyeth's Statements Regarding the Top-Line Phase II Results Were Not False or Misleading**

Plaintiffs' arguments that the Phase II data were "cherry picked" for the June 17, 2008 press release, and that the "omissions" from the release rendered it misleading, are contradicted by the content of the release itself.  The June 17 release included only the primary, "top-line" results of the Phase II trial and did not include detailed results – whether favorable, unfavorable, or neutral.  *See* Def. Mem. at 6-7.  Contrary to Plaintiffs' contention, the release did prominently disclose the most "material, negative results" of the study (Opp. at 10), stating in the headlines that "Primary Efficacy Endpoints in Overall Study Population Not Statistically Significant" and again in the first paragraph that "[t]he study did not attain statistical significance on the primary efficacy endpoints in the overall study population."  Ex. R; ¶ 82.  Disclosure that the study did not attain statistical significance on its primary efficacy endpoints made it absolutely clear to the investment community that Elan and Wyeth could not file for FDA approval on the basis of the Phase II data.  Def. Mem. at 7.  In addition, the release disclosed that vasogenic edema was reported in the treated population with an increased frequency in carriers and at higher doses, and that there was a higher incidence of serious adverse effects in the treated population among carriers.  ¶ 82; Ex. R.  Even as to the more favorable results with respect to the non-carriers, the release disclosed that the results were only in "post hoc" analyses.  *Id.*  Plaintiffs' "cherry-picking" argument also ignores the favorable aspects of the detailed results that were *not* included in the release, including the strong results from the post hoc analysis of the "completers," the clear signal on two of the efficacy tests in the total population that just missed statistical significance, and the encouraging findings on the reduction of loss in brain volume.  Def. Mem. at 8.

Plaintiffs erroneously contend that Defendants' disclosure of the "top-line" Phase II results required Defendants to disclose every potentially negative detail of the results.  Opp. at 10.  However, allegations that a defendant's statements are incomplete are insufficient to state a claim for securities fraud.  *Brody*, 280 F.3d at 1006.  To be actionable, an omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one

---

DEFENDANTS' REPLY I/S/O                                5                CASE NO.: C 10-02785 CRB
MOTION TO DISMISS                                                                    292928

1    that actually exists." *Id.* Plaintiffs fail to allege how the June 17 press release allegedly did this.

2    They do not challenge the accuracy of any of the statements in the release or explain how the

3    release "affirmatively created an impression" that the detailed results of the study would not be

4    subject to varying interpretations and opinions.

5         Plaintiffs' attempts to distinguish the authorities cited by Defendants on this point are

6    unavailing. Plaintiffs neglect to mention the specific reason the court in *In re Adolor*

7    *Corporation Securities Litigation*, 616 F. Supp. 2d 551 (E.D. Pa. 2009), "recognized no

8    obligation by the defendants to disclose additional information" (Opp. at 12), which was that the

9    "[d]efendants consistently stated that they would only discuss the top-line results of each study"

10   and "repeatedly warned investors not to draw any final conclusions about Entereg's overall

11   success until all three studies were complete and the full data set could be analyzed." 616 F.

12   Supp. 2d at 569.

13        The analysis in *Adolor* applies here. As early as April 2007, Elan informed the

14   investment community that Elan and Wyeth would issue "top line" Phase II results in mid-2008

15   before issuing full detailed results at an appropriate neurology conference. Ex. H at 9; *see also*

16   Ex. P at 1. Elan and Wyeth warned investors in the June 17, 2008 release that the information

17   contained in the release "reflect[ed] preliminary analyses," that further analyses would be

18   completed prior to the "presentation of detailed results" at ICAD, and that further analyses could

19   lead to different interpretations of and opinions about the data. Ex. R at 2-3. The analyst reports

20   Plaintiffs rely on show that investors understood this. Ex U at 1; Ex. S at 2; Ex. T at 1. Investors

21   were fully informed that the "top line" release did not contain the full detailed results of the

22   Phase II trial, and therefore Defendants here, as in *Adolor*, were under no duty to disclose the

23   details Plaintiffs allege were improperly omitted.

24        Plaintiffs' attempt to distinguish *Padnes v. Scios Nova*, No. Civ. 95-1693 MHP, 1996 WL

25   539711 (N.D. Cal. Sept. 18, 1996) is also ineffective. They argue that *Padnes* is not analogous

26   because that case involved allegations of misleadingly omitted alleged clinical trial design

27   defects, as opposed to unfavorable clinical trial results. Opp. at 12. This distinction is

28   meaningless. The plaintiffs in *Padnes* similarly alleged defendants' statements summarizing

---

DEFENDANTS' REPLY I/S/O                    6                    CASE NO.: C 10-02785 CRB
MOTION TO DISMISS                                              292928

1   complex clinical trial results were misleading "due to omissions," and whether those alleged

2   omissions consisted of design defects or other aspects, defendants necessarily "had to make a

3   judgment as to which specific bits of information about the study and its conclusions to disclose."

4   *Padnes,* 1996 WL 539711, at *5.  As that court stated, it is only "[w]ith the advantage of

5   hindsight [that] defendants' judgment as to which information to disclose is subject to challenge;

6   however, this does not amount to facts explaining why the difference between the earlier and

7   later statements is not merely the difference between two permissible judgments, but rather the

8   result of a falsehood."  *Id.*

9         **C.**    **Plaintiffs Cannot Rely on Stock Price or Analysts' Reactions To Establish Materiality of Alleged Omissions From the Top-Line Release**

10        Unable to specifically respond to Defendants' arguments as to why the "omission" of

11  certain detailed results from the June 17, 2008 release did not render it misleading, Plaintiffs

12  assert that "[o]ne need only compare the reaction of Elan's ADR price on June 17, 2008 … with

13  the reaction on July 29, 2008 … to see that investors continued to be misled on June 17, 2008."

14  Opp. at 10.  This analysis is insufficient.  *See In re Apple Computer Sec. Litig.*, 886 F.2d 1109,

15  1117 (9th Cir. 1989) (finding that though dramatic stock price movements may indicate an

16  optimistic statement is material, with respect to omissions, "evidence of stock price movement

17  provides no rational basis" for determining whether material information was omitted); *see also*

18  *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991).

19        Plaintiffs' selective use of analyst reports to compare some analysts' "positive" reactions

20  to the June 17, 2008 release with other analysts' "negative" reactions to the ICAD presentation

21  fares no better.  Opp. at 34-35.  Plaintiffs mischaracterize the analyst reports they cite by quoting

22  only the headlines and ignoring the content, which emphasized that the primary efficacy

23  endpoints had not been met; noted the limitations of the post hoc analyses; discussed the issue of

24  vasogenic edema and the higher incidence of serious adverse events in the treated patients; and

25  acknowledged that a complete evaluation of the implications of the data had to await the

26  presentation at ICAD.  *See, e.g.*, Ex. S at 2; Ex. U at 1; Ex. T at 1, 4; *see also* Def. Mem. at 7.

27

28

---

1  Evidence of a few select analysts' negative reactions is insufficient to establish that

2  omissions rendered a disclosure misleading, particularly with regard to complex scientific data.

3  *Johnson v. Pozen*, No. 1:07 CV 599, 2009 WL 426235, at *25 (M.D.N.C. Feb. 19, 2009) ("courts

4  have observed that analysts' claims, especially on matters involving scientific knowledge, are not

5  always reliable"); *In re Inspire Pharm., Inc. Sec. Litig.*, 515 F. Supp. 2d 631 (M.D.N.C. 2007)

6  (analysts' speculative claims not probative of whether defendant's non-disclosure of clinical

7  study endpoint was a material omission); *see also Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d

8  618, 627 (4th Cir. 2008) ("Furthermore, the fact that some analysts relied on defendants' hopeful

9  statements to speculate – as the analysts admitted they were doing – that Study 109 would

10  succeed adds little to an inference of scienter.  Speculation by investors and subsequent buyers'

11  remorse cannot support an Exchange Act suit alone.").

12  **D.     The Alleged Misrepresentations Are Protected by the "Safe Harbor"
             for Forward-Looking Statements**

13

14  To the extent that Plaintiffs contend that the statements at issue were misleading because

15  of what they projected about the final results of the clinical trials of bapineuzumab, they are

16  forward-looking in nature and protected by the PSLRA "safe harbor."  The statements were

17  identified as forward-looking and contained meaningful cautionary language specifically

18  addressing the risks and uncertainties associated with the trial.  *See, e.g.,* Ex. K at 2; Ex. R at 3;

19  *see also In re Nuvelo, Inc. Sec. Litig.*, Civ. 07-4056 VRW, 2008 WL 5114325, at *16 (N.D. Cal.

20  Dec. 4, 2008) ("The alleged misstatements about the likelihood of future success at phase 3 trials

21  . . . fit the definition of forward-looking statements under the PSLRA.").  This is true even if the

22  statements also contain historical facts.  *See* Def. Mem. at 13.  Contrary to Plaintiffs' contention

23  (Opp. at 13-14), the safe harbor still applies because the Complaint does not allege with required

24  particularity that the statements were made with knowledge of their alleged falsity, as discussed

25  in Section II below.  *See Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1039 (7th Cir. 1996)).[4]

26

27  [4] Because Plaintiffs do not dispute that the non-public statements alleged in the Complaint are not actionable under Section 10(b), these statements will not be discussed in this reply.  *See* Opp. at 14 n.11.  Plaintiffs also fail to address, and thus also apparently concede, that Elan's statements at the ICAD Conference on July 29, 2008 were not misleading.  *See* Def. Mem. at 17.

28

DEFENDANTS' REPLY I/S/O          8          CASE NO.:  C 10-02785 CRB
MOTION TO DISMISS                                                292928

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.  THE COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER REGARDING THE BAPINEUZUMAB DISCLOSURES

### A.  Plaintiffs' Allegations Are Not Sufficiently Particularized To Create a Strong Inference of Conscious Misconduct or Deliberate Recklessness

Plaintiffs assert they have established scienter because "[t]here can be no legitimate dispute that Defendants knew the interim and final results of the Phase 2 study of bapineuzumab when they made the misrepresentations at issue."  Opp. at 15.  Again, Plaintiffs' conclusion on this issue is incorrect.  To establish a strong inference of scienter, Plaintiffs "must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir. 2002) ("Where pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a strong inference of scienter, a Rule 12(b)(6) dismissal is proper.").  The Complaint clearly does not meet this standard.

With regard to the May 21, 2007 press release, Plaintiffs assert in conclusory fashion that they have shown scienter because at the time of release, Defendants knew "that the interim results failed to meet the established criteria."  Opp. at 16.  These allegations cannot satisfy the strict pleading requirements of the PSLRA because Plaintiffs fail to allege any "corroborating details" for their allegations concerning the interim criteria or interim results, *see Silicon Graphics*, 183 F.3d at 984, "including their contents, who prepared them, which officers reviewed them and from whom [Plaintiffs] obtained the information" – "[i]n short, [Plaintiffs'] complaint is not sufficiently specific to raise a strong inference of deliberate recklessness."  *Id.* at 984-85; *see also Lipton,* 284 F.3d  at 1036 (9th Cir. 2002) ("negative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient to meet the heightened pleading requirements of the PSLRA").

Even if Plaintiffs' allegations regarding Defendants' "knowledge" that the interim criteria were not met were accepted as true, Plaintiffs cannot show Defendants were deliberately reckless because they do not allege Defendants did not believe the interim data were indeed "strong," "clinically meaningful," and otherwise warranted the commencement of Phase III trials.  Def. Mem. at 20-21; *see also In re Astrazeneca Sec. Litig.*, 559 F. Supp. 2d 453, 471 (S.D.N.Y. 2008)

---

1  (declining to find recklessness because "[n]othing appears in the complaint showing that there

2  was a consensus of the management that the risks of Exanta made the drug unlikely to be

3  approved … Further, other facts, such as the approval of Exanta in Europe for some uses, made it

4  not unreasonable for defendants to believe in their product."); *see also Padnes*, 1996 WL

5  539711, at *6 (finding fraud was not properly alleged because "neither facts showing reasonable

6  people could have disagreed with defendants' beliefs nor the mere fact that the Phase III tests

7  were unsuccessful, even when coupled with a list of supposed protocol defects, amount to

8  allegations that there was no reasonable basis for the opinions which were expressed").

9       With regard to the June 17, 2008 press release, Plaintiffs allege no facts to support their

10  assertion that Defendants had access to the full analyses of the Phase II study and its implications

11  (or that they even existed at that time). Opp. at 16-17. The release explicitly stated otherwise,

12  warning that the analyses contained within it were preliminary. Ex. R at 2. Plaintiffs'

13  unsupported allegation that Defendants necessarily had access to every detail of the Phase II

14  results and their implications because the study had been completed by the time the "top-line"

15  release was issued is also insufficient. *See, e.g.*, *Detroit Gen. Ret. Sys. v. Medtronic*, 621 F.3d

16  800 (8th Cir. 2010) ("mere possession of uncollected data does not indicate Medtronic was aware

17  of the implications of that data"); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex*

18  *Capital, Inc.*, 531 F. 3d 190, 196 (2d Cir. 2008) ("Teamsters' broad reference to raw data lacks

19  even an allegation that these data had been collected into reports that demonstrated that loan

20  origination practices were undermining the collateral's performance [and so] they have not raised

21  an inference of scienter based on knowledge of or access to information demonstrating the

22  inaccuracy of Dynex's public statements.").

23       Finally, Plaintiffs' argument that the June 17, 2008 release reflects "cherry-picking" of

24  only favorable aspects of the Phase II results is meritless. As set forth in Section I.C., *supra*, the

25  June 17 release included the "top line" results, both favorable and unfavorable, and did not

26  include detailed results, whether characterized as favorable or unfavorable. Ex. R at 1; Def.

27  Mem. at 7. At most, Plaintiffs' allegations amount to second-guessing of Elan and Wyeth's

28  judgment about what to include in the press release. Even assuming that Plaintiffs' hindsight-

DEFENDANTS' REPLY I/S/O          10          CASE NO.: C 10-02785 CRB
MOTION TO DISMISS                                          292928

1    based second-guessing were the "better" judgment, that is not sufficient to state a claim for

2    securities fraud.  *See Padnes*, 1996 WL 539711, at *5 (fraud allegations insufficient where

3    plaintiffs failed to allege "facts explaining why the difference between the earlier and later

4    statements is not merely the difference between two permissible judgments, but rather the result

5    of a falsehood").

6          **B.    Defendants' Legitimate Reasons for the Alleged "Omissions" in the May 17,
                   2007 and June 17, 2008 Releases Are Far More "Cogent and Compelling"
7                  Than Plaintiffs' Implausible Theories of Scienter**

8          Plaintiffs' attempt to dismiss the blinding requirement for the Phase II trial and the ICAD

9    embargo as "excuses" used by Defendants to mislead investors must fail.  Opp. at 17.  What

10   Plaintiffs call "excuses" are in fact legitimate reasons for Defendants' actions that appear on the

11   face of the Complaint and in Elan's public disclosures.

12         Elan and Wyeth repeatedly told investors that, in accordance with their discussions with

13   the FDA, in order to preserve the blinded nature and thus the scientific integrity of the Phase II

14   trial, they would not announce the criteria for the interim review or the data from the interim

15   review.  *See, e.g.*,  ¶¶ 70, 72, 77; Ex. H at 8-9; Ex. J at 7-9; Ex. K; Ex. M at 6, 12, 13, 17; Ex. Q

16   at 2, 4.  Plaintiffs argue that the disclosure of the results of the interim review would not have

17   compromised the trial's blinded status as long as patients and doctors in the trial were not told

18   whether they were receiving bapineuzumab or placebo (Opp. at 17), but they offer no factual or

19   logical support for their erroneous view of scientific standards and practices.  Nor do they cite

20   any investor or analyst who disputed that disclosing the interim results of the trial would have

21   compromised the scientific validity of the trial.

22         Contrary to Plaintiffs' assertion, Elan and Wyeth did not, by the May 21, 2007 press

23   release, "elect[] to speak to investors and convey that the interim review had met Elan's objective

24   criteria."  *Id.*  Rather, Elan and Wyeth announced in that press release the major business

25   decision to commence extremely costly Phase III trials, saying that it "was based on the

26   seriousness of the disease and the totality of what the companies have learned from their

27   immunotherapy programs, including a scheduled Interim look at data from an ongoing Phase 2

28   study, which remains blinded."  Ex. K.  They further warned, "[n]o conclusion about the Phase 2

---

DEFENDANTS' REPLY I/S/O                    11              CASE NO.: C 10-02785 CRB
MOTION TO DISMISS                                          292928

1    study can be drawn until the study is completed and the final data are analyzed and released in

2    2008." *Id.* Elan and Wyeth could not have been more clear to investors and the general public

3    that they were not representing anything about the interim data.

4         With respect to disclosure of the final Phase II results, Elan and Wyeth did exactly what

5    they said they would do: they committed to a full presentation of the results of the Phase II trial

6    at an important neurology conference (ICAD) on July 29, 2008 and, a few weeks before then,

7    released the "top-line" results that drove and explained the key elements of their business

8    planning. *See* Ex. H at 9; Ex. P at 1. At every step of the way, both companies explained what

9    they were doing, so that investors had a clear understanding that the June 17, 2008 press release

10   only presented the top-line results and that the detailed results would be presented later. *Id.* This

11   course of action is not fraud. It is normal execution of a business plan, a typical method for

12   disclosing results of clinical trials, and a completely plausible and logical explanation for the

13   actions of Elan and Wyeth.[5]

14        This is in marked contrast to Plaintiffs' speculative and implausible theories as to why

15   Elan and Wyeth would misrepresent the clinical results in June, only to have their

16   misrepresentations exposed a mere six weeks later in an already scheduled presentation at a high-

17   profile scientific conference, with their high-level executives (including Elan's CEO) in

18   attendance. *See* Opp. at 18-19. The Complaint's motive allegations – that Elan presented

19   misleading study results in order to induce doctors and patients to enroll in the Phase III trials –

20   were so obviously inadequate that Plaintiffs now even deny that they were intended as motive

21   allegations. Def. Mem. at 22-23; Opp. at 15 n.13. Plaintiffs also fail to respond to Defendants'

22   explanation of why these allegations are completely implausible. Def. Mem. at 22-23. As in

23   *Cozzarelli*, "legitimate business motivations explain each of the facts alleged in the complaint

24   more convincingly than plaintiffs' tenuous theory of wrongful intent." 549 F.3d at 626.

25

26   ---

[5] Plaintiffs' assertion that the ICAD embargo is "outside the pleadings" is meritless in light of the specific materials
27   relied on in their Complaint. *See* Opp. at 18. Defendants cited a statement in an April 28, 2008 Natixis Bleichroeder
     report stating that "ICAD will impose an embargo on most of the data." Def. Mem. at 6 (quoting Ex. P at 1).
28   Plaintiffs not only quoted from this report in their Complaint, they quoted (with ellipses) the exact sentence in which
     this statement appears. *See* ¶ 76; Ex. P at 1.

1    Plaintiffs' most novel argument on scienter is that it is "in no way inconsistent" for

2    Defendants to have had both legitimate *and* fraudulent motivations for not disclosing additional

3    information concerning the Phase II interim and final results.  Opp. at 18.  This is nonsense.

4    These legitimate motivations are "plausible nonculpable explanations for the defendant's

5    conduct," *Tellabs*, 551 U.S. at 310, that are far more compelling than Plaintiffs' farfetched

6    theories about defrauding patients and doctors into participating in clinical trials and undertaking

7    enormously expensive Phase III trials on the basis of failed Phase II interim data because "there

8    was always the chance that the final results of the Phase 2 trial would be better."  ¶ 15.

9       **C.    Plaintiffs Cannot Rely on Any "Core Operations" Presumption of Scienter**

10    To establish scienter on the part of the individual Defendants, Plaintiffs rely on a district

11    court case in another jurisdiction holding that knowledge of the alleged falsity of public

12    statements regarding a company's "core business operations" can be attributed to senior

13    executives of the company.  Opp. at 20-22.  This argument completely ignores the Ninth

14    Circuit's holding with regard to "core operations" in *South Ferry LP, #2 v. Killinger* that

15    "[w]here a complaint relies on allegations that management had an important role in the company

16    but does not contain additional detailed allegations about the defendants' actual exposure to

17    information, it will usually fall short of the PSLRA standard."  542 F.3d 776, 784 (9th Cir. 2008).

18    Because the Complaint lacks any such "detailed allegations," "the inference that defendants had

19    knowledge of the relevant facts [is] not much stronger, if at all, than the inference that defendants

20    remained unaware."  *Id*.  The inference is even weaker, given that the "facts" allegedly withheld

21    were interpretations of complex scientific data.

22  **III.   THE COMPLAINT FAILS TO STATE A CLAIM WITH RESPECT TO THE
23          DISCLOSURES CONCERNING TYSABRI**

24    Plaintiffs' claims with respect to the disclosures regarding Tysabri depend upon

25    numerous illogical and unsupported assumptions in their Complaint and Opposition.  Plaintiffs

26    do not properly allege any false or misleading statements, and do not properly allege any facts to

27    support a strong inference that Defendants acted with scienter.

28

DEFENDANTS' REPLY I/S/O          13          CASE No.: C 10-02785 CRB
MOTION TO DISMISS                                         292928

1    First, Plaintiffs assume that a suspected case of PML is an actual case of PML that is

2  simply awaiting formal diagnosis and confirmation.  This assumption is not supported by the

3  facts alleged in the Complaint.  The Complaint does not allege that any of the 12 alleged

4  suspected cases reported in the AERS database ever became confirmed cases or even remained

5  suspected cases as of July 24, 2008.  This is not surprising, given the questionable reliability of

6  the database and the fact that the symptoms of MS and PML are similar – points to which the

7  Opposition does not respond.  Def. Mem. at 23-24.

8    Second, the Complaint and the Opposition make the unsupported assumption that the

9  Defendants were aware of all of the symptoms and treatment of particular patients at the time

10  they occurred.  Opp. at 23-24; ¶¶ 119, 129.  Elan and the individual Defendants were not the

11  treating physicians for these patients, and there was no assurance that doctors or patients would

12  report these matters to the FDA or Elan or Biogen.  The assertion in the Opposition (at 24) that it

13  was significant that at various times in the past some patients had received a plasma exchange is

14  contradicted by the allegations of the Complaint on which the assertion is based.[6]  *See also* Def.

15  Mem. at 25.

16    Third, the Complaint assumes that it can show scienter by "temporal proximity" alone,

17  citing *Berson v. Applied Signal Tech.*, *Inc.*, 527 F.3d 982 (9th Cir. 2008).  Opp. at 24.  This is

18  incorrect.  Plaintiffs' argument is not only based on a misreading of *Berson*,[7] but it is inconsistent

19  with Ninth Circuit precedent.  While the Ninth Circuit has "allowed the temporal proximity of an

20  alleged fraudulent statement or omission and a later disclosure to *bolster* a complaint," it has

21  "never allowed the temporal proximity between the two, *without more*, to satisfy the

22  requirements of Rule 9(b)."  *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001) (emphasis in

23  original) (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 997 (9th Cir. 1999)).  Here, temporal

24

25  _____

26  [6] ¶ 93 (quoting Biogen representative on July 22, 2008 earnings call):  "And the key thing is that we have had no confirmed cases in these two years since the re-launch.  People have used plasma exchange on occasion and for suspected cases of PML and on occasion patients go back on Tysabri and again no confirmed cases."

27  [7] The portion of *Berson* Plaintiffs rely on cited the Ninth Circuit in *Ronconi*, stating "the 'temporal proximity' of the misleading statement and the subsequent disclosure 'bolster[s]' the inference that defendants knew about the order

28  when they made the statement."  527 F.3d at 988 n.5.

_____

DEFENDANTS' REPLY I/S/O                    14                    CASE NO.:  C 10-02785 CRB
MOTION TO DISMISS                                                                292928

1   proximity does not logically bolster Plaintiffs' allegation, given the nature of the specific tests

2   that result in confirmation of a case of PML.  *See* ¶ 117.

3          Fourth, Plaintiffs assume that there was no explanation for not disclosing suspected cases

4   of PML – which had typically turned out to be *non*-cases of PML – other than a desire to deceive

5   the investing public.  They utterly ignore the plausible, nonculpable reason for Elan and Biogen's

6   decision to announce only confirmed cases of PML – namely, to avoid causing unnecessary and

7   potentially harmful upheaval and confusion among doctors and their patients, and in the market.

8   Def. Mem. at 24.  Plaintiffs' assertion that Elan (and presumably Biogen) planned to "conceal"

9   suspected cases is particularly illogical, given the Complaint's allegations that suspected cases

10  were reported in a publicly available database.

11         Plaintiffs' reliance on *Siracusanov. Matrixx Initiatives, Inc.* to argue that Elan's

12  "withholding of reports of adverse effects" supports a strong inference deliberate recklessness is

13  misplaced.  *Siracusano* concerned a manufacturer's withholding of actual reports of an adverse

14  effect of its product that was unknown to the market while simultaneously touting its safety.  *See*

15  Def. Mem. at 24; *Siracusano v. Matrixx Initiatives, Inc.* 585 F.3d 1167 (9th Cir. 2009), *cert.*

16  *granted*, 130 S. Ct. 3411 (2010).  Here, by contrast, PML was a well-known adverse effect of

17  Tysabri, and Plaintiffs' complaint is that Elan did not report *non*-cases of PML or cases which

18  were not yet known to be PML.  *See* ¶¶ 6, 61; *see also* Opp. at 22.  Contrary to Plaintiffs'

19  suggestion, *Siracusano* does not impose an obligation to disclose erroneous or speculative

20  information to the market.

## CONCLUSION

22         For the foregoing reasons, the Defendants' motion to dismiss should be granted and the

23  Complaint should be dismissed with prejudice.

24  Dated: January 21, 2010                    Respectfully submitted,

25                                             SHEARMAN & STERLING LLP

26                                             By:   /s/ Stephen D. Hibbard

27                                             *Counsel for Defendants Elan*
28                                             *Corporation, plc, G. Kelly Martin,*
                                               *Shane Cooke, and Lars Ekman*